# In the United States Court of Federal Claims

No. 18-1943C
(Filed: February 19, 2020)

|  |  |  |
|---|---|---|
| | ) | |
| HCIC ENTERPRISES, LLC, | ) | Keywords: Breach of Contract; |
| d/b/a HCI GENERAL CONTRACTORS, | ) | Construction Contract; Federal Bureau of |
| | ) | Prisons; Partial Summary Judgment; |
| Plaintiff, | ) | Contract Interpretation |
| | ) | |
| v. | ) | |
| | ) | |
| THE UNITED STATES, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |
| | ) | |

*Frank V. Reilly*, Fort Lauderdale, FL, for Plaintiff.

*Robert C. Bigler*, Trial Attorney, Commercial Litigation Branch, Civil Division, U.S. Department of Justice, Washington, DC, for Defendant, with whom were *Steven J. Gillingham*, Assistant Director, *Robert E. Kirschman, Jr.*, Director, *Joseph H. Hunt*, Assistant Attorney General, for Defendant.

## OPINION AND ORDER

KAPLAN, Judge.

Plaintiff HCIC Enterprises, LLC ("HCIC") entered a contract with the Federal Bureau of Prisons ("FBOP") to repair the roofs of a number of buildings at the Federal Correctional Institution in Estill, South Carolina (hereinafter "FCI Estill"). HCIC alleges that it incurred damages and was unable to complete the project in a timely fashion because of FBOP's breach of contractual provisions that obligated it to: 1) provide access to the worksite during normal working hours except during an emergency, and 2) give HCIC access to all roofs designated in the Statement of Work. Compl. ¶¶ 8–11, ECF No. 1. Currently before the Court is HCIC's "motion for judgment on the pleadings," ECF No. 13, and the government's cross-motion for partial summary judgment regarding the proper interpretation of the contractual provisions that HCIC claims were breached, ECF No. 14.

For the reasons that follow, the Court finds that HCIC's motion lacks merit. Further, the government is entitled to partial summary judgment as to the issue of contract interpretation it has put before the Court. Thus, the government's motion for partial summary judgment is **GRANTED** and HCIC's motion is **DENIED**.

# BACKGROUND[1]

## I.      The Terms of the Contract

In January of 2016, FBOP issued Solicitation No. IFBP03051600001 (hereinafter "the Solicitation") seeking "labor, materials and equipment" to re-roof buildings at FCI Estill. Def.'s Cross-Mot. for Partial Summ. J. & Resp. to Pl.'s Mot. for Summ. J. App. ("Def.'s App.") at 1, ECF No. 14-1 (the Solicitation). HCIC submitted its offer on March 2, 2016 and FBOP awarded HCIC the contract on April 20, 2016. Id. at 2. In accordance with the Solicitation, the roofing work was to be completed in one year. Id. at 51 (Statement of Work).

As pertinent to this case, the Solicitation provided that "[a]ccess to the site will be available during normal working hours except during emergencies." Id. at 10. It further advised that FBOP "assume[d] no responsibility . . . for shorter hours due to institutional emergencies or entry and/or exit of workers necessitated by normal institution routines." Id. In addition, the Solicitation stated that "[t]he procedures and institutional entrance/exit routines applicable to this project will be explained at both the pre-bid conference/site visit and the pre-construction meeting." Id.

The Statement of Work incorporated into the Solicitation provided that the contractor agreed to adhere to the regulations and guidelines promulgated by FBOP and FCI Estill "relating to safety, custody and conduct of inmates, and the safety of the population." Id. at 55–56. Among these was the rule that prohibited contractors from "mov[ing] unescorted to the[] job site" and "mov[ing] to other parts of the institution without an escort." Id. FBOP committed to provide "two escorts for th[e] project." Id. at 52. The statement further provided that a contractor could request "additional escorts as may be required" by providing notice of such request forty-eight hours in advance, and that the government would "endeavor to meet [the] needs of [the] request should additional staff be available to serve as escorts." Id.

## II.     Guidance Provided at the Pre-Bid Conference and Site Visit

On February 10, 2016, and consistent with the Solicitation, the contracting officer held the pre-bid conference and site visit. Id. at 39–44 (pre-bid site visit meeting minutes). As reflected in the minutes of that meeting, David Downes, an FBOP Facilities Management Specialist, verbally reiterated the escort requirements set forth in the Statement of Work and described their impact on contract performance. Id. at 41. He explained that "[t]he contractor w[ould] be escorted at all times when performing work on the site," that "two[] escorts have been dedicated to support the project," and that, as a result, "the contractor will only be allowed to work on one roof at a time." Id. Although HCIC apparently did not send a representative to the meeting, id. at 40 (list of attendees), the meeting minutes were posted to the Federal Business Opportunities website later that day, see id. at 49–50.

---

[1] The facts in this section are based on the complaint and the exhibits submitted in connection with the cross-motions for summary judgment. Unless specifically noted, the facts set forth are not in dispute.

### III.    Questions and Answers

On February 12, 2016, FBOP uploaded a list of questions and answers to the Federal Business Opportunities website. Id. at 47–50. One potential bidder asked, "[i]f approved and needed, would there be an extra cost to the contractor to pay for an additional escort[?]" Id. at 48. FBOP responded that "[o]ne escort on the roof and one escort on the ground is approved by the FBOP." It further explained that "[t]here is no means for the contractor to pay for salaries for additional BOP staff" and cautioned that "[t]he contractor should plan on being limited to two full-time FBOP escorts." Id.

### IV.    Pre-Construction Meeting and Proposed Schedule

Per the contract, a preconstruction conference was held at the work site on June 1, 2016. Id. at 58 (preconstruction conference meeting minutes). The topics covered included labor standards, subcontractor responsibilities, work schedules, local policies, contraband, and other issues. The minutes of the conference reflect that Captain Nathan Clark reiterated the security policies to the attendees, including the requirement that HCIC personnel would be escorted at all times while performing the contract, and that the contracting officer's representative would coordinate all escorts. Id. at 60.

The day after the pre-construction meeting, HCIC submitted its proposed schedule. The schedule reflected that HCIC planned to complete its work in 250 days, which would be well within the 365-day deadline set forth in the contract. Id. at 64. According to its proposed schedule, HCIC's construction phase would run from August 17, 2016 through April 7, 2017. Id. HCIC planned to begin the roofing repairs on the "Facilities" building on August 17, 2016, and ultimately on each of the other buildings on a staged, one-by-one basis. Id.

### V.    Project Delays and Termination for Default

The contracting officer issued a notice to proceed on June 13, 2016. Id. at 67 (notice of termination for default). As noted, the original completion date for the contract was 365 days later, or June 1, 2017. Contract performance was not completed by June 1, 2017. The performance period was instead extended by four bi-lateral modifications to the contract—first by fifty-five days, then twenty-five days, then 180 days, and finally by 193 days to September 5, 2018. See Compl. Ex. C, at 10–11.[2]

The work was still not completed by September 5, 2018. Def.'s App. at 74. On September 6, 2018, HCIC filed a claim for an equitable adjustment and requested an additional 419-day extension of the contract to October 30, 2019. See Compl. Ex. C, at 10–12. In its letter, HCIC alleged that between December 20, 2017 and September 5, 2018 (the period covered by the most recent modification of the contract) the project had incurred another 259 calendar days of delays which HCIC attributed to "the inability of the government to provide adequate staff to

---

[2] Plaintiff's exhibits are contained in the same document as the complaint. The page numbers cited for Plaintiff's exhibits reflect the pagination assigned by the court's electronic filing system.

escort the necessary HCI[C] crews required to complete the project in the time allotted in the contract." Id. at 11. HCIC requested an award of $480,821.74 as compensation for additional costs incurred as a result of these delays. Id. at 12. It also requested an additional award of $777,854.48 to cover its costs and profit for the additional 419 days it had requested to complete the project. Id.

 In an email sent on November 14, 2018, the contracting officer denied HCIC's request for an equitable adjustment. Id. Ex. D, at 19–20. He noted that the prior extensions "were executed as supplemental agreements and agreed to bi-laterally." Id. at 19. Those modifications, he noted, "are considered complete equitable adjustments for each of the associated time periods." Id. The contracting officer acknowledged that twelve days were due to HCIC "for time that FCI Estill could not accommodate the contractor." He stated that those days "w[ould] not be calculated in the liquidated damages that are currently accruing." Id.

Finally, the contracting officer observed that HCIC was out of time to complete the project as of the date of his letter. He advised HCIC that it had not provided information "that compels the Government to believe that additional adjustments are necessary or appropriate." Id. at 19–20. He therefore denied HCIC's request for a fifth extension of the deadline for completion of the project. Id. at 20.

## VI.    The Present Suit

HCIC filed the present complaint on December 19, 2018. ECF No. 1. In the three-page complaint, HCIC alleges that FBOP "breached the written agreement between the parties by failing to allow access to the site during normal working hours except during emergencies . . . [,] by failing to providing access to all roofs designated in the Statement of Work . . . [, and] by improperly denying HCI[C]'s claim" submitted to the contracting officer. Compl. ¶¶ 9–10, 12. HCIC further alleges that the CO's denial of its request for an equitable adjustment was arbitrary and capricious "because there was no evidence in the administrative record to show that HCI[C] is or was the sole and proximate cause of the delayed completion date for the project." Id. ¶ 14. HCIC demands an award of $480,821.74 "plus additional damages as will be shown to have been incurred after the date the claim was filed." Id. ¶ 19.[3]

The government answered the complaint on April 30, 2019. ECF No. 9. The parties submitted a joint status report on June 18, 2019 proposing a discovery schedule that would end on December 31, 2019 and stating that "the parties may file Rule 56 Motions for Summary Judgment at the close of discovery." Joint Status Rep. at 1, ECF No. 10.

---

[3] On February 13, 2019, two months after HCIC filed the present action, it requested that the contract be terminated. Def.'s App. at 67. Instead, the contracting officer issued a Notice of Termination for Default on April 30, 2019. Id. The Notice represented the "final decision of the Contracting Officer" and a determination "that the failure to perform [was] not excusable." Id. at 68.

HCIC did not wait to the close of discovery to file its dispositive motion. Instead, on September 9, 2019, it filed a pleading that it styled a "motion for judgment on the pleadings." See generally Pl.'s Mot. for J. on the Pleadings & Incorporated Mem. of Law ("Pl.'s Mot."), ECF No. 13. Notwithstanding the styling of the motion, in the text, HCIC requests that the Court grant it summary judgment in accordance with Rule 56 of the Rules of the Court of Federal Claims ("RCFC"), on the grounds that "[t]he relevant language of the contract was clear that defendant was prohibited from denying the plaintiff jobsite access except for emergencies." Id. at 8. Counsel for HCIC also clarified during oral argument that HCIC seeks summary judgment and not judgment on the pleadings. The Court will therefore treat the motion as one for summary judgment under RCFC 56.

The government filed a cross-motion for partial summary judgment on October 7, 2019. Def.'s Cross Mot. for Part. Summ. J. & Resp. to Pl.'s Mot. for Summ. J. ("Def.'s Mot."), ECF No. 14. In its cross-motion, the government seeks a ruling that HCIC's claim is based on a misinterpretation of the contract. Id. at 8.

The cross-motions are fully briefed. Oral argument was held on February 6, 2020.

## DISCUSSION

### I.      Jurisdiction

Under the Tucker Act, 28 U.S.C. § 1491(a)(2), the Court of Federal Claims has jurisdiction "to render judgment upon any claim by or against, or dispute with, a contractor arising under section 7104(b)(1) of title 41," i.e. the Contract Disputes Act (the "CDA"). "[F]or the Court of Federal Claims to have jurisdiction under the CDA, the contractor must submit a proper claim—a written demand that includes (1) adequate notice of the basis and amount of a claim and (2) a request for a final decision." M. Maropakis Carpentry, Inc. v. United States, 609 F.3d 1323, 1328 (Fed. Cir. 2010) (citing James M. Ellett Constr. Co., Inc. v. United States, 93 F.3d 1537, 1541–42 (Fed. Cir. 1996)). The CDA also requires "the contractor [to] have received the contracting officer's final decision on [its] claim." Id.

Invoking FAR 33.206, HCIC submitted a claim for an equitable adjustment to the contracting officer on September 6, 2018. Compl. Ex. C, at 10–12. In its claim, HCIC sought a sum certain and an extension of the contract completion date. Id. The contracting officer denied HCIC's claim on November 14, 2018, about a month before HCIC filed its complaint here. See Compl. Ex. D, at 19–20. Thus, HCIC has met the requirements of the CDA and this Court has jurisdiction over the claims in its December 19, 2018 complaint.

### II.      HCIC's Motion for Summary Judgment

Summary judgment is appropriate where there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250 (1986); see also RCFC 56(a). A party seeking summary judgment cannot rest on the allegations in the pleadings. The movant must support each assertion that a fact cannot be genuinely disputed with evidence, "including depositions, documents, electronically stored information, affidavits or declarations, stipulations . . . , admissions, interrogatory answers, or other materials." RCFC 56(c). Further, "a party seeking summary judgment always bears the

initial responsibility of informing the [trial] court of the basis for its motion." <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 323 (1986). The movant must "identify[] those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." <u>Id.</u>

In this case, HCIC has failed to provide the Court with an adequate statement of the basis for its motion. HCIC's motion recites legal standards and conclusions. It does not identify what it claims are the undisputed facts and therefore cannot explain how the application of the legal standards it recites entitles it to judgment as a matter of law. And although the Court prodded counsel to supply these details at the oral argument on the cross-motions, its efforts were unavailing.

The Court (and the government) are therefore left to guess what actions the government supposedly took that breached its contractual obligations to make "[a]ccess to the site . . . available during normal working hours except during emergencies" or to "provide access to all roofs designated in th[e] Statement of Work." Compl. ¶ 8. And to the extent that HCIC attempts to assert that particular facts are not in dispute, it supplies no evidence to support such assertions; it merely cites back to the allegations in its complaint, which also appear to consist entirely of legal conclusions rather than facts. Therefore, HCIC's motion for summary judgment is **DENIED**.

**III.      The Government's Motion for Partial Summary Judgment**

In its motion for partial summary judgment, the government asks the Court to rule that FBOP did not breach the contract by denying HCIC the right to perform repairs on more than one roof at a time, as HCIC alleged in its claim before the contracting officer. <u>See</u> Compl. Ex. C, at 11 (stating that it was always HCIC's intent "to have multiple crews on multiple buildings, concurrently in order to complete the project under the time allotted in the contract," and that because it was not permitted to do so, the project had to be "phased," thus resulting in delays). For the reasons that follow, the Court agrees and therefore grants the government's motion for partial summary judgment as to this point.

**A.      <u>Principles of Contract Interpretation</u>**

It is well established that contract interpretation "starts with the language of the contract." <u>SUFI Network Servs., Inc. v. United States</u>, 785 F.3d 585, 593 (Fed. Cir. 2015). If a contract's provisions are "clear and unambiguous, they must be given their plain and ordinary meaning." <u>Coast Fed. Bank, FSB v. United States</u>, 323 F.3d 1035, 1040 (Fed. Cir. 2003) (quoting <u>Landmark Land Co. v. Fed. Deposit Ins. Corp.</u>, 256 F.3d 1365, 1373 (Fed. Cir. 2001)). Thus, the Court "may not look to extrinsic evidence to interpret unambiguous provisions." <u>Jacintoport Int'l LLC v. United States</u>, 121 Fed. Cl. 196, 202 (2015) (quoting <u>TEG-Paradigm Envtl., Inc. v. United States</u>, 465 F.3d 1329, 1338 (Fed. Cir. 2006) (internal punctuation omitted)). Further, "[w]hen interpreting the contract, the document must be considered as a whole and interpreted so as to harmonize and give reasonable meaning to all of its parts." <u>NVT Techs., Inc. v. United States</u>, 370 F.3d 1153, 1159 (Fed. Cir. 2004) (citing <u>McAbee Constr., Inc. v. United States</u>, 97 F.3d 1431, 1434–35 (Fed. Cir. 1996)).

**B.**     <u>**Application of Principles**</u>

In its complaint, HCIC contends that FBOP breached two contractual provisions which it alleges impeded its ability to complete work on the contract on a timely basis: 1) the provision in the Solicitation stating that "[a]ccess to the site will be available during normal working hours except during emergencies," and 2) the provision in the Statement of Work stating that "FBOP will provide access to all roofs designated in this Statement of Work." Compl. ¶¶ 8–10. But neither provision's plain language imposes an obligation on FBOP to allow HCIC to work on more than one building at a time. The language guaranteeing "[a]ccess to the site" addresses <u>when</u> the contractor will perform the repairs ("during normal working hours except during emergencies") and not <u>how</u> the work may be performed (i.e., by repairing more than one roof at a time). In fact, the provision appears under the heading "Work Hours." And the statement that FBOP "will provide access to all roofs" similarly does not address the issue of whether FBOP must provide access to more than one roof at a time.

Further, the scope of the obligation to provide HCIC with "access" to the worksite must be read in light of other provisions in the contract. Those provisions condition such "access" on compliance with security requirements. <u>See</u> Def.'s App. at 55–56 (stating that contractor agreed to adhere to the regulations and guidelines promulgated by FBOP and FCI Estill "relating to safety, custody and conduct of inmates, and the safety of the population") <u>Id.</u> One such security requirement, as described above, is that workers be escorted "at all times, when entering the institution" and "may not move to other parts of the institution without an escort." <u>Id.</u> at 55, 56. FBOP agreed to provide two escorts for the project. <u>Id.</u> at 52. And while it allows a contractor to request that FBOP provide additional escorts, FBOP does not commit to grant such requests. <u>Id.</u> The Statement of Work instead merely provides that the government would "endeavor to meet [the request] should additional staff be available to serve as escorts." <u>Id.</u>

The requirement that workers always be escorted when on the premises, coupled with FBOP's limited obligation to make only two escorts available for the project, had practical implications. It meant that the crews could only work on one roof at a time, with one escort on the roof and one on the ground. Indeed, HCIC's proposed work schedule shows that it so understood the effect of these provisions. <u>See id.</u> at 64 (scheduling of roof repairs on a staged basis with one roof repaired at a time).

Further, as promised in the Solicitation, FBOP provided information to prospective offerors during the pre-bid conference regarding "[t]he procedures and institutional entrance/exit routines applicable to th[e] project." <u>Id.</u> at 10. The minutes of that meeting show that the information provided included reminders that: 1) "[t]wo [] escorts have been dedicated to support the project"; and 2) "the contractor will only be allowed to work on one roof at a time." <u>Id.</u> at 41; <u>see also id.</u> at 48 (Q&A No. 6) (presenting a question regarding the availability of escorts to which the government responded that "[o]ne escort on the roof and one escort on the ground is approved by the FBOP").

In its response brief, HCIC argues the government's motion for summary judgment should nonetheless be denied because "the relevant provisions of the contract as it relates to the project's scheduled completion date are the project scheduling provisions and the agreed schedule," which "both provide for a project duration not to exceed 365-calendar days." Pl.'s

Resp. to Def.'s Mot. at 3, ECF No. 17. It contends that "project duration must be measured in calendar days and must not be measured in security escorts." Id. at 6.

Despite its best efforts, the Court cannot grasp the relationship between these observations regarding the measurement of project duration and the claims in HCIC's complaint. The government does not contend that the duration of the project can be measured in anything other than calendar days. To the contrary, in its motion, the government argues that, as a matter of law, the contractual provisions cited in HCIC's complaint regarding "access" did not give it a right under the contract to perform repairs on multiple roofs at the same time. The Court has concluded, for the reasons set forth above, that the government is correct. The government is therefore entitled to summary judgment regarding the issue of contract interpretation it raises.

## CONCLUSION

For the foregoing reasons, HCIC's motion for summary judgment (styled a motion for judgment on the pleadings) is **DENIED**. The government's cross-motion for partial summary judgment is **GRANTED**.

The Court notes that yesterday, February 18, 2020, as this opinion was being finalized, and twelve days after oral argument on the cross motions, HCIC filed an eleventh-hour motion to amend its complaint. ECF No. 27. The proposed amended complaint is longer and contains more factual assertions than the original complaint. But rather than alleging a breach of contract and requesting an award of damages under the Contract Disputes Act, the amended complaint purports to challenge the contracting officer's denial of HCIC's requests for equitable adjustment and his assessment of liquidated damages. HCIC also alleges that the contracting officer's decision to terminate the contract for default was arbitrary, capricious, and not in accordance with law under the Administrative Procedure Act, 5 U.S.C. § 706. It requests a declaratory judgment to that effect under 28 U.S.C. § 2201. It does not request an award of money damages.

The Court will reserve ruling on the motion to amend until the government files its response. It notes, however, that its jurisdiction under the Tucker Act is limited to claims for money damages. See James v. Caldera, 159 F.3d 573, 580 (Fed. Cir. 1998). The APA does not authorize an award of money damages, 5 U.S.C. § 702 (providing for judicial review of actions "seeking relief other than money damages") and, in any event, it is well-established that "[f]ederal district courts—not the Court of Federal Claims—are the proper fora for APA actions." Stroughter v. United States, 89 Fed. Cl. 755, 763 (2009). Further, the Declaratory Judgment Act does not provide this Court with jurisdiction to decide cases for which there is no underlying claim for money damages. Nat'l Air Traffic Controllers Ass'n v. United States, 160 F.3d 714, 716–17 (Fed. Cir. 1998) (observing that "[t]he Court of Federal Claims has never been granted general authority to issue declaratory judgments," and that "the Declaratory Judgment Act [] is not applicable to the Court of Federal Claims"). The Court is therefore skeptical regarding the merits of HCIC's motion to amend, as such an amendment may well be futile.

In the meantime, in the Court's view, it is in the interest of judicial economy for it to set forth its understanding of the contractual provisions placed before it by the parties' cross-motions. Once the government files a response, the Court will rule on the motion to amend and

request that the parties file a joint status report specifying what further proceedings are appropriate in the case.

**IT IS SO ORDERED.**

s/ Elaine D. Kaplan
ELAINE D. KAPLAN
Judge