# In the United States Court of Federal Claims

No. 18-1943C
(Filed: July 9, 2020)

|  |  |  |
|---|---|---|
| HCIC ENTERPRISES, LLC, d/b/a HCI GENERAL CONTRACTORS, | ) ) ) | |
| Plaintiff, | ) ) ) | Keywords: Motion to Amend; Futility; Bad Faith; Contracting Officer Final Decision |
| v. | ) ) | |
| THE UNITED STATES, | ) ) | |
| Defendant. | ) ) ) ) | |

*Frank V. Reilly*, Fort Lauderdale, FL, for Plaintiff.

*Robert C. Bigler*, Trial Attorney, Commercial Litigation, Civil Division, U.S. Department of Justice, Washington, DC, for Defendant, with whom were *Steven J. Gillingham*, Assistant Director, *Robert E. Kirschman, Jr.*, Director, *Joseph H. Hunt*, Assistant Attorney General.

## OPINION AND ORDER

**KAPLAN, Judge.**

Plaintiff HCIC Enterprises, LLC ("HCIC") has filed a second motion to amend its complaint. For the reasons set forth below, the motion is denied.

## BACKGROUND

### I.   Relevant Facts[1]

The Court's prior opinions granting the government's motion for partial summary judgment and denying HCIC's first motion to amend its complaint contain a comprehensive discussion of the background of the present motion. See HCIC Enters., Inc. v. United States, 147 Fed. Cl. 118, 121–23 (2020); ECF No. 32 (order denying motion to amend complaint). To briefly recapitulate, on April 20, 2016, the Federal Bureau of Prisons ("FBOP") awarded HCIC a contract worth $2,735,000 to replace roofs on some of the buildings at the Federal Correctional Institute ("FCI") in Estill, South Carolina. Def.'s Cross Mot. for Partial Summ. J. & Resp. to

---

[1] The facts set forth in this section are drawn from the parties' pleadings and documents submitted in connection with the earlier motions filed in this case.

Pl.'s Mot. for Summ. J. App. ("Def.'s App.") at 70, ECF No. 14-1 (February 14, 2019 Determination and Findings Authorizing Contract Termination for Default). Under the contract, the repairs were to be completed within one year. The contracting officer ("CO") issued a notice to proceed on June 13, 2016, setting a completion date of June 13, 2017. Id.

The performance period was subsequently extended through four bi-lateral contract modifications—first by fifty-five days, then twenty-five days, then 180 days, and finally by 193 days to September 6, 2018. See Initial Compl. Ex. C, at 10–11, ECF No. 1.[2] Despite the extensions, HCIC failed to complete the work by September 5. Def.'s App. at 74. Instead, on September 6, 2018, HCIC filed a claim for an equitable adjustment, requesting another extension of the performance period, this time for 419 days, to October 30, 2019. See Initial Compl. Ex. C, at 10–12. In its claim, HCIC stated that between December 20, 2017 and September 5, 2018 (the period covered by the most recent modification of the contract) the project had incurred another 259 calendar days of delays which HCIC attributed to "the inability of the government to provide adequate staff to escort the necessary HCI[C] crews required to complete the project in the time allotted in the contract." Id. at 11. HCIC requested $480,821.74 as compensation for additional costs incurred. Id. at 12. It also requested an additional award of $777,854.48 to cover its costs and profit for the additional 419 days it had requested to complete the project. Id.

 The CO denied HCIC's request for an equitable adjustment in a November 14, 2018 email. Id. Ex. D, at 19–20. He noted that the prior extensions "were executed as supplemental agreements and agreed to bi-laterally." Id. at 19. Those modifications, he explained, "[were] considered complete equitable adjustments for each of the associated time periods." Id. The CO acknowledged that HCIC was entitled to compensation for twelve days of delay during the most recent modification period "for time that FCI Estill could not accommodate the contractor" and that those days "w[ould] not be calculated in the liquidated damages that are currently accruing." Id. Finally, the CO observed that HCIC was out of time to complete the project as of the date of his letter. Id. He advised HCIC that it had not provided information "that compels the Government to believe that additional adjustments are necessary or appropriate." Id. at 19–20. He therefore denied HCIC's request for a fifth extension of the deadline for completion of the project. Id. at 20.

On February 13, 2019, two months after HCIC filed the present action, it requested that the contract be terminated for convenience. Pl.'s Mot. for Leave to File 2d Am. Compl. Ex. B, ECF No. 29-3 (email exchange from HCIC president to CO seeking contract termination). Instead, the CO issued a "Determination and Findings Authorizing Contract Termination for Default" on February 14, 2019. Def.'s App. at 70. FBOP's Administering Contracting Officer concurred in the recommended default termination, id. at 78, and the CO issued a Notice of Termination for Default on April 30, 2019, id. at 67–68.

---

[2] Many of Plaintiff's exhibits are contained in the same document as the initial complaint. The page numbers cited for these exhibits reflect the pagination assigned by the court's electronic filing system. See Initial Compl., ECF No. 1.

## II.      Prior Proceedings

HCIC filed the present action on December 19, 2018. ECF No. 1. In its initial complaint, HCIC alleged that FBOP "breached the written agreement between the parties by failing to allow access to the site during normal working hours except during emergencies . . . [,] by failing to provide access to all roofs designated in the Statement of Work . . . [, and] by improperly denying HCI[C]'s claim" submitted to the CO. Initial Compl. ¶¶ 9–10, 12. HCIC further alleged that the CO's denial of its request for an equitable adjustment was arbitrary and capricious "because there was no evidence in the administrative record to show that HCI[C] is or was the sole and proximate cause of the delayed completion date for the project." Id. ¶ 14. It demanded an award of $480,821.74 "plus additional damages as will be shown to have been incurred after the date the claim was filed." Id. ¶ 19.

On September 9, 2019, and before expiration of the discovery period, HCIC filed what it later clarified was a motion for summary judgment pursuant to Rule 56 of the Rules of the Court of Federal Claims ("RCFC"). See HCIC Enters., 147 Fed. Cl. at 123 (clarifying that HCIC sought a motion for summary judgment notwithstanding that its motion was stylized as a motion for judgment on the pleadings). The government filed a cross-motion for partial summary judgment on October 7, 2019 in which it sought a ruling that HCIC's breach claim was based on a misinterpretation of the relevant provisions of the contract. Id.

The Court denied HCIC's motion for summary judgment. Id. at 125. It observed that its denial was based on HCIC's failure to identify what undisputed facts supported its claim, and its inability to "explain how the application of the legal standards it recite[d] entitle[d] it to judgment as a matter of law." Id. at 124.

Next, the Court addressed the government's motion for summary judgment regarding the interpretation of the contractual provisions upon which HCIC relied. It concluded that the contractual provisions that promised HCIC would be granted "access" to the worksite and to the roofs of the buildings at FCI Estill must be read in light of other provisions in the contract which conditioned such access on compliance with security requirements. Id. at 125. These included the requirement that workers be escorted "at all times, when entering the institution" and the prohibition against workers "mov[ing] to other parts of the institution without an escort." Id. (quoting Def.'s App. at 55, 56). Under the contract, FBOP only committed to provide two security escorts for the project. Id. (citing Def.'s App. at 52). As the Court observed, "[t]he requirement that workers always be escorted when on the premises, coupled with FBOP's limited obligation to make only two escorts available for the project . . . meant that the crews could only work on one roof at a time, with one escort on the roof and one on the ground." Id. It therefore granted the government's cross-motion for partial summary judgment as to that issue of contract interpretation. Id.

As noted above, one day before the Court issued its opinion on the cross-motions for summary judgment, HCIC filed an eleventh-hour motion to amend its complaint to delete its breach of contract claim. It sought to substitute an allegation that the CO's denial of HCIC's requests for equitable adjustment and assessment of liquidated damages violated the Administrative Procedure Act. See id. at 125–26; Pl.'s Proposed 1st Am. Compl. ¶¶ 110–121, ECF No. 27-1. Before the government could file a response to HCIC's first motion to amend,

HCIC filed the new one that is currently before the Court. Accordingly, the Court denied the first motion to amend as moot. See ECF No. 32.

## III.    HCIC's Proposed Amended Complaint

HCIC's second proposed amended complaint includes five numbered counts. In Count I, HCIC challenges the CO's November 14, 2018 denial of its request for a 419-day extension of the contract deadline and payment of costs incurred on the grounds that the CO's decision was "factually and legally flawed." 2d Proposed Am. Compl. ¶¶ 218–30, ECF No. 29-1. In Count II, HCIC challenges what it claims was the CO's assessment of liquidated damages against it in his November 14, 2018 letter, again on the grounds that the decision was "factually and legally flawed." Id. ¶¶ 231–45. In Count III, HCIC similarly contends that the CO's February 14, 2019[3] decision to terminate the contract for default was "factually and legally flawed" and also that it "was made in bad faith." Id. ¶¶ 246–77. In Count IV, HCIC alleges that the claim the government has apparently asserted against its performance bond is "based on false facts," id., and that "[a]t the time FBOP filed its false bond claim, FBOP knew full well that HCIC should not be held responsible for th[e] delays and costs because FBOP did not 'provide access to all roofs designated in the Statement of Work'" as the contract required, id. ¶ 265 (quoting Def.'s App. at 54). Finally, in Count V (which is mis-numbered as a second Count IV), HCIC asserts that it is entitled to rescind its previous waiver of a potential claim for $182,570.05 based on additional costs allegedly accrued from September 15, 2017 to December 20, 2017. Id. ¶¶ 278–89; Initial Compl. Ex. C, at 11. HCIC seeks a total of $1,833,455.49 "plus additional costs that may be incurred during the pendency of these proceedings against FBOP." 2d Proposed Am. Compl. at 37.

## DISCUSSION

RCFC 15(a)(2) provides that where, as here, a party can no longer amend its pleading "as a matter of course," it may do so "only with the opposing party's written consent or the court's leave." Although the Court should "freely give leave" to a party seeking to amend its pleading "when justice so requires," that principle is not unlimited. Id. "[F]utility of amendment," among other things, may justify denial of a motion to amend. Foman v. Davis, 371 U.S. 178, 182 (1962) (emphasizing also that "the grant or denial of an opportunity to amend is within the discretion of the [trial court]").

For the reasons set forth below, the Court concludes that none of the claims set forth in HCIC's second proposed amended complaint would survive a motion to dismiss. Because the proposed amendments of the complaint would be futile, HCIC's motion to amend is denied.

## I.    Count I

As noted, in Count I of its proposed amended complaint, HCIC alleges that the CO's decision not to extend the contract a fifth time (for 419 days) and not to pay HCIC for costs it incurred as a result of the most recent delays was "factually and legally flawed," "was not based

---

[3] Count III states that the decision to terminate was made on February 14, 2018, but this appears to be a typographical error. See Def.'s App. at 70–78.

on a proper analysis of the facts," and was "legally deficient." Id. ¶ 224. Count I appears to be based on the mistaken premise that this Court will be conducting a review of the CO's decision to determine whether it is arbitrary and capricious or contrary to law. Under the Contract Disputes Act ("CDA"), however, the Court does not review the CO's decision; it conducts de novo review of the claims that were put before the CO. See Assurance Co. v. United States, 813 F.2d 1202, 1206 (Fed. Cir. 1987); see also 41 U.S.C. § 7104(b) (providing for "de novo" action in the Court of Federal Claims). Put another way, "once an action is brought following a contracting officer's decision, the parties start in court or before the board with a clean slate." Wilner v. United States, 24 F.3d 1397, 1402 (Fed. Cir. 1994).

Further, Count I of the proposed amended complaint does not contain sufficient factual allegations to support HCIC's claim that FBOP breached the contract by not extending the performance period a fifth time. As it did when it filed its claim with the CO, HCIC alleges its performance was delayed because of government action, i.e., FBOP's failure to supply HCIC with more than two security escorts, which—in light of security requirements—prevented HCIC's crews from working on more than one roof at a time. See, e.g., 2d Proposed Am. Compl. ¶¶ 56, 58 ("FBOP will not allow HCIC to start work on The General Housing Unit # 2 Building for security reasons . . . because FBOP will only provide 2 security escorts at a time."); id. ¶¶ 39, 41 ("FBOP did not provide additional escorts as HCI[C] had requested . . . [and] did not allow HCIC to work on more than one building at a time."); id. ¶¶ 87, 89 ("FBOP will not allow HCIC to start work on The General Housing Unit # 3 Building for security reasons . . . because FBOP will only provide 2 security escorts at a time."); id. ¶¶ 119, 121 (making identical allegations relating to the general housing building #4); id. ¶ 152 (same with regard to the camp core building); id. ¶¶ 181, 183 (same with regard to the outside warehouse garage and powerhouse storage building). But this Court has already ruled that FBOP was within its rights under the contract to supply only two escorts to HCIC, and to enforce security requirements that limited HCIC's crews to working on only one roof at a time.

HCIC acknowledges in its reply brief that "the proposed amended complaint . . . [is] based upon the same operative facts as the original claim." HCIC Reply to Def.'s Objs. to Pl.'s 2d Mot. for Leave to File[] Its Proposed Am. Compl. ("HCIC's Reply") at 4, ECF No. 34. It also recognizes that the Court determined in its earlier decision that, "[a]s a matter of law . . . FBOP was within its contractual rights to delay the project under the circumstances of this case." Id. at 3. Nonetheless, HCIC asserts, its proposed amended complaint alleges "an alternative theory of recovery," i.e., "that FBOP was not within its contractual rights to deny the claim." Id. at 4. But HCIC does not explain the basis for this assertion. And to the extent that its "alternative theory" concerns the merits of the CO's reasoning when he denied the claim, its allegations fail to state a claim because the Court's review, as noted above, is de novo. Id. The Court concludes, therefore, that Count I of HCIC's proposed amended complaint fails to state a plausible claim for relief, would not withstand a motion to dismiss, and is therefore futile. See Ashcroft v. Iqbal, 556 U.S. 662, 679 (2009) (citing Bell Atl. Corp. v. Twombly, 550 U.S. 544, 556 (2007)) ("[O]nly a complaint that states a plausible claim for relief survives a motion to dismiss."); Meyer Grp., Ltd. v. United States, 115 Fed. Cl. 645, 650 (2014) (citing Shoshone Indian Tribe v. United States, 71 Fed. Cl. 172, 176 (2006)) ("An amendment is futile where it 'would not withstand a motion to dismiss.'").

## II.    Count II

In Count II, HCIC seeks to amend its complaint to include a challenge to the government's alleged assessment of liquidated damages in the amount of $421,768. 2d Proposed Am. Compl. ¶¶ 233, 245. This claim is not ripe, however, because the government has not assessed liquidated damages against HCIC. The CO merely stated in denying HCIC's claim that such damages continued to accrue. See Initial Compl. Ex. D, at 19 (stating only that "liquidated damages [] are currently accruing"). He did not make a demand for payment. Since there is nothing for the Court to review at this time regarding liquidated damages, amendment of the complaint to include Count II would be futile.

## III.    Counts III and IV

In Count III, HCIC alleges that FBOP's decision to terminate the contract for default was made in bad faith. 2d Proposed Am. Compl. at 31. Relatedly, in Count IV, HCIC alleges that the government used "false facts" to support its claim against HCIC's performance bond because FBOP knew that it had not provided access to all roofs designated in the Statement of Work as the contract required. Id.

HCIC's proposed amended complaint does not include sufficient facts to support its claim that the government terminated the contract for default in bad faith. The Federal Circuit and its predecessor court, the Court of Claims, "have long upheld the principle that government officials are presumed to discharge their duties in good faith." Road & Highway Builders, LLC v. United States, 702 F.3d 1365, 1368 (Fed. Cir. 2012) (citing Am–Pro Protective Agency v. United States, 281 F.3d 1234, 1239 (Fed. Cir. 2002)). And "it is 'well-established . . . that a high burden must be carried to overcome this presumption,' amounting to clear and convincing evidence to the contrary." Id. (quoting Am–Pro Protective Agency, 281 F.3d at 1239–40). "Moreover, a challenger seeking to prove that a government official acted in bad faith in the discharge of his or her duties must show a 'specific intent to injure the plaintiff' by clear and convincing evidence." Id. (quoting Am–Pro Protective Agency, 281 F.3d at 1240).

HCIC's allegations do not approach these thresholds. It alleges that "FBOP terminated the contract . . . because the contracting officer intended to file his false claim on HCIC's performance bond . . . to force HCIC and/or HCIC's surety to pay costs and liquidated damages." 2d Proposed Am. Compl. ¶¶ 258–59. But there is no factual predicate for this claim which would permit the Court to find—by clear and convincing evidence no less—that the presumption of good faith has been rebutted. In fact, HCIC's underlying theory that the agency terminated the contract so that it could file a claim against the performance bond using "false facts" is inherently implausible, given the fact that FBOP repeatedly agreed to extend the contractual deadline. Moreover, the assertion that FBOP is relying upon "false facts" in making a claim on the performance bond seems to be grounded in its contention—which the Court has rejected— that FBOP was contractually obligated to provide it with more than two security escorts.

To the extent that HCIC is pressing a separate claim in Count IV regarding the merits of FBOP's claim on its performance bond, it lacks standing to do so. The performance bond is based on a contract between the government and a third party. Therefore, amendment of the complaint to add Counts III and IV would be futile.

**IV.    Count V**

In the final count of the proposed amended complaint, HCIC claims it is entitled to rescind a previous waiver of damages in the amount of $182,570.05 covering delays and costs during the period from September 15, 2017 through December 20, 2017. 2d Proposed Am. Compl. at 35; Initial Compl. Ex. C, at 11. The Court lacks jurisdiction over this claim because it was never presented to the CO.

Under the CDA, the Court of Federal Claims has jurisdiction over actions filed within twelve months of a contracting officer's decision on a claim. 41 U.S.C. § 7104(b). The court of appeals has held that this Court's exercise of jurisdiction "requires both a valid claim and a contracting officer's final decision on that claim." M. Maropakis Carpentry, Inc. v. United States, 609 F.3d 1323, 1327 (Fed. Cir. 2010) (citing James M. Ellett Constr. Co. v. United States, 93 F.3d 1537, 1541–42 (Fed.Cir.1996)); see also Securiforce Int'l Am., LLC v. United States, 879 F.3d 1354, 1359 (Fed. Cir. 2018).

In this case, HCIC submitted a claim to the CO on September 6, 2018. Initial Compl. Ex. C, at 10. It did not ask to rescind its previous waiver of damages covering delays from September 15, 2017 through December 20, 2017, or state that it was entitled to an additional $182,570.05 for that period of time. Id. at 10–12. Instead, it requested an additional 419 days to complete the work and sought: 1) $480,821.74 representing costs, overhead, and profit for the delay period from December 20, 2017 through September 5, 2018, and 2) $777,854.48 in costs, overhead, and profit to cover the period from September 6, 2018 through October 30, 2019. Id. at 11–12. Because HCIC never filed a claim seeking to rescind its waiver of damages for the September 15, 2017 through December 20, 2017 period, its proposed amendment of its complaint would be futile.

**CONCLUSION**

For the foregoing reasons, HCIC's second motion to amend the complaint is **DENIED**. The Court hereby orders HCIC to show cause by **Friday, July 24, 2020** why its original complaint should not be dismissed for failure to state a claim in light of the Court's opinion granting the government's motion for partial summary judgment. See Baptichon v. United States, 144 Fed. Cl. 676, 683 (2019) (citing Anaheim Gardens v. United States, 444 F.3d 1309, 1315 (Fed. Cir. 2006)) ("[T]he court may dismiss a complaint sua sponte for failure to state a claim upon which relief can be granted if 'the pleadings sufficiently evince a basis for that action.'").

**IT IS SO ORDERED.**

s/ Elaine D. Kaplan
ELAINE D. KAPLAN
Judge